UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| DAVID A. EDWARDS, II, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-101 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security denying plaintiff's

claim for supplemental security income (SSI) benefits.  On March 14, 2011, plaintiff

filed his application for SSI benefits.  (ID## 199-206).  He initially alleged an onset of

disability of August 14, 2009, but later amended his claim to allege a March 14, 2011,

onset of disability.[1]  (ID# 38).  Plaintiff's claim for SSI benefits was denied on initial

review.  (ID## 121-32).  On September 19, 2012, plaintiff received a hearing before an

administrative law judge (ALJ), at which he was represented by counsel.  (ID## 56-

119).  On November 23, 2012, the ALJ issued her decision finding that plaintiff was not

---

[1]Plaintiff had filed a companion claim for disability insurance benefits (DIB).
(ID## 192-98).  Plaintiff's disability insured status expired on December 31, 2006.
Thus, it was plaintiff's burden to submit evidence demonstrating that he was disabled
on or before December 31, 2006.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir.
1990).  Plaintiff abandoned his claim for DIB benefits during the administrative
hearing when he amended his claims to allege a March 14, 2011, onset of disability.
(Op. at 1, Dkt. 7-2, ID# 38; *see* ID## 63-65, 339).

disabled.  (ID## 38-50).  On December 23,  2013, the Appeals Council denied review (ID## 24-27), and the ALJ's decision became the Commissioner's final decision.

Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1.     The ALJ committed reversible error by not properly considering plaintiff's severe impairments.

2.     The ALJ committed reversible error by improperly weighing the evidence.

3.     The ALJ committed reversible error by finding that 585 jobs in the State of Michigan was a sufficient number.

(Pltf. Br. at 17, Dkt. 11, ID# 915).  The Commissioner's decision will be affirmed.

## <u>Standard of Review</u>

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012);

*Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## The ALJ's Findings

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after March 14, 2011. (Op. at 3, ID# 40). She found that plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine, major depressive disorders, and somatoform disorders." (*Id.*). Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments. (*Id.* at 4, ID# 41). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work, except:

> he can lift 10 pounds occasionally and less than 10 pounds frequently. He can stand and/or walk 6 hours of an 8-hour workday and sit up to 2 hours in an 8-hour workday. He requires a sit/stand option at approximately 30-minute intervals. He can push/pull with his upper extremities on an occasional basis including 10 pounds occasionally and less than 10 pounds frequently. He should avoid climbing ladders/ropes/scaffolds, crawling, but could occasionally climb ramps or stairs, balance, stoop, kneel and crouch. He should avoid all overhead reaching with the right dominant upper extremity. He can occasionally reach overhead with the left upper extremity and can reach outward on an occasional basis. He can handle, finger, and feel with the right dominant extremity on an occasional basis and frequently on the left. He should avoid exposure to extreme cold, excessive vibration, unprotected heights, hazardous machinery, and the operation of such hazardous machinery. He is able to perform simple, routine, repetitive tasks consisting of one or two steps. He should work in a low stress environment (defined as only occasional changes in the work setting and only occasional decision making). He would work best away from the public and could occasionally interact with co-workers; however, without performance of tandem tasks with those co-workers.

(*Id.* at 6, ID# 43).

The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible. (*Id.* at 6-11, ID## 43-48). The ALJ found that plaintiff was not able to perform any past relevant work. (*Id.* at 11, ID# 48). Plaintiff

-4-

was 36 years old as of the date he filed his application for SSI benefits and 37 years old as of the date of the ALJ's decision.  Thus, at all times relevant to his claim for SSI benefits he was classified as a younger individual.  (*Id.* at 12, ID# 49).  Plaintiff has a limited education and is able to communicate in English.  (*Id.*).  The ALJ found that the transferability of job skills was not material to a disability determination.  (*Id.*). The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were 24,535 jobs nationally and 585 jobs in Michigan that the hypothetical person would be capable of performing. (ID## 110-15).  The ALJ found that this constituted a significant number of jobs. Using Rule 202.18 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.  (*Id.* at 12-13, ID## 49-50).

## Discussion

### 1.

Plaintiff's arguments are based on evidence that he never presented to the ALJ. (Pltf. Br. at 11-12, 17- 18, ID## 909-10, 915-16; Reply Br. at 3-4, ID## 942-43).  This is patently improper.  The ALJ's is the final decision, subject to review by this court in cases where the Appeals Council denies review.  This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v.*

*Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported her decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The Court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand. (Pltf. Br. at 21, ID# 919). His reply brief concludes with an identical request. (Reply Br. at 6, ID# 945). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon ex rel. Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The Court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can

-6-

consider such evidence in determining whether a sentence-six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence he now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. There is no developed argument or legal authority supporting plaintiff's request for remand under sentence six. Issues raised in a perfunctory manner are deemed waived.[2] *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also Moore v. Commissioner*, 573 F. App'x 540, 543 (6th Cir. 2014). Plaintiff "develops no argument to support a remand, and thus the request is waived." *Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014).

---

[2] Plaintiff's reference to *Cotton v. Sullivan* on page 18 of his initial brief is not made in connection with any argument for a remand under sentence six. He states: "There was some limited post-hearing evidence from Dr. Winestone which confirmed that impairment. Whether post-hearing evidence should be considered under the rational[e] of *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993), can depend upon whether the evidence could have been procured before then." (Pltf. Br. at 18, ID# 916). Plaintiff asks the Court to review the ALJ's decision on the basis of evidence that plaintiff never presented to her. *Cotton* and numerous other Sixth Circuit cases *prohibit* this court from considering evidence that was not presented to the ALJ. *See Cotton*, 2 F.3d at 696; *see also DeLong v. Commissioner*, 748 F.3d 723, 725 n.3 (6th Cir. 2014); 336 F.3d at 478; *Bass v. McMahon*, 499 F.3d at 513 ("There is no backdoor route to get new evidence considered for the first time at the court [] level; the only method to have new evidence considered is to ask for a sentence six remand under 42 U.S.C. § 405(g)[.]").

Even assuming that this issue had not been waived, plaintiff has not addressed, much less satisfied his statutory burden for remanding this matter to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g). The majority of the proffered evidence (ID## 882-86, 888-91) is not new because it was generated before November 23, 2012, the date of the ALJ's decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84. The only "new" evidence offered is a one-page letter, dated January 28, 2013, from John Winestone, M.D., to Scott Greenwald, M.D. (ID# 887).

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. *See Courter v. Commissioner*, 479 F. App'x 713, 725 (6th Cir. 2012). The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried, his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *see also Deloge v. Commissioner*, 540 F. App'x 517, 519 (6th Cir.2013). Plaintiff has not addressed, much less has he carried his burden. Dr. Winestone's January 28, 2013, letter is not material. It does not address plaintiff's condition during the period at issue: March 14, 2011, the date of plaintiff's application for SSI benefits, through November 23,

-8-

2012, the date of the ALJ's decision.  The letter is very short and it documents that plaintiff was "doing well" after a surgery performed on January 16, 2013.  (ID# 887).

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted.  Plaintiff's arguments must be evaluated on the record presented to the ALJ.

## 2.

Plaintiff states that the ALJ committed reversible error "by not properly considering" his severe impairments.  (Pltf. Br. at 17-18, ID## 915-16).  The finding of a severe impairment at step 2 is a threshold determination.  The finding of a single severe impairment is sufficient to require continuation of the sequential analysis.  *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  The ALJ found at step 2 of the sequential analysis that plaintiff had four severe impairments:  degenerative disc disease of the cervical spine, major depressive disorders, and somatoform disorders.[3]  (Op. at 3, ID# 40).  The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant."  *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  The ALJ continued the sequential analysis and

_____

[3]A somatoform disorder is a mental disorder "characterized by physical symptoms for which there are no demonstrable organic findings or known psychological mechanisms."  *Buxton v. Halter*, 246 F.3d at 763-64 n.1.  On June 17, 2011, a State agency psychologist reviewed the evidence and provided an opinion indicating that plaintiff had a somatoform disorder (ID# 126).  Plaintiff's reliance on evidence generated by Dr. Winestone that he never presented to the ALJ (*see* Pltf. Br. at 18, ID# 916; Reply Br. at 3, ID# 942) is misplaced for the reasons stated in section 1 of this opinion.

considered all plaintiff's severe and non-severe impairments in making her factual finding regarding plaintiff's RFC.  (Op. at 3, 6, ID## 40, 43).

### 3.

Plaintiff argues that the ALJ committed reversible error by "improperly weighing" the evidence.  Plaintiff's argument in this regard is not a model of clarity. He places great emphasis on the ALJ's failure to mention that Dr. Bloom and Dr. Greenwald indicated that plaintiff "had possible complex regional pain syndrome or sympathetically mediated pain."  (Pltf. Br. at 17) (citing 431, 667, found at Ex. 6F/6, ID# 460 and Ex. 12F/27, ID# 699).

It is well established that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."  *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Boseley v. Commissioner*, 397 F. App'x 195, 199 (6th Cir. 2010).  The ALJ is responsible for weighing medical opinions.  *See Buxton*, 246 F.3d at 775; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *accord White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009).

The second facet of plaintiff's argument is an assertion that the ALJ gave too much weight to non-examining physicians and psychologists.  (Pltf. Br. at 19, ID# 919; Reply Br. at 4, ID# 943).  Plaintiff makes a vague assertion that the ALJ should have given weight to "more recent medical records" (Pltf. Br. at 19, ID# 917).  To the extent

that plaintiff is referring to evidence that was never presented to the ALJ, the argument is disregarded for the reasons listed in section 1 of this opinion.

This section of plaintiff's brief omits any reference to the fact that the ALJ found that the opinions of plaintiff's treating physician and therapist at Mary Free Bed Rehabilitation Hospital (Mary Free Bed) were entitled to great weight. (Op. at 11, ID# 48). The ALJ did not commit error in giving great weight to the opinions of plaintiff's treating physician and psychologist at Mary Free Bed. *See Gayheart v. Commissioner*, 710 F.3d 365 at 375-76.

In addition, the ALJ was required to consider the opinions provided by non-examining state agency consultants. 20 C.F.R. § 416.927(e). Here, the ALJ found that those opinions were entitled to great weight: "The opinions of the Disability Determination Service s (DDS) physicians/consultants indicating that the claimant is not disabled are consistent with the overwhelming objective evidence of record. Accordingly, the undersigned gives great weight to the medical findings of M. McCarthy, Ed.D. and S. Mohiuddin, M.D[.]" (Op. at 11, ID# 48). "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Commissioner*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks v. Commissioner*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological

consultants ... may be entitled to greater weight than the opinions of treating or examining sources.").

Plaintiff's argument that the ALJ improperly weighed the evidence in this record is without merit. Plaintiff claimed a March 14, 2011, onset of disability. Most of the evidence that he presented in support of his claim for SSI benefits was generated outside the period at issue, which ran from March 14, 2011, the date plaintiff filed his application for SSI benefits, through November 23, 2012, the date of the ALJ's decision. Such evidence is "minimally probative" and is considered only to the extent that it illuminates the plaintiff's condition during the periods at issue. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

On August 14, 2009, nineteen months before his alleged onset of disability, plaintiff was a passenger in a car that was involved in an accident. (ID## 66, 345, 351, 367-71). A CT scan of plaintiff's cervical spine showed "no fracture or dislocation" and plaintiff's soft tissues were "unremarkable." (ID# 351). Images taken of plaintiff's thoracic spine were within normal limits and there was no evidence of any acute abnormality. (ID# 352). There was no evidence of traumatic subluxation or dislocation. Plaintiff's paravertebral soft tissues were normal. (ID# 371). Plaintiff was diagnosed with a cervical and thoracic strain. (ID# 368). Plaintiff testified that right after the accident he began smoking marijuana to help him sleep at night and to help him relax and he continued to use it through the date of his hearing. (ID## 80-81).

In October 2009, Aleksandar Tosic, M.D., found that plaintiff's right upper extremity was "neurovascularly intact." The x-rays taken of the shoulder revealed "normal anatomy." (ID# 358). The MRI of plaintiff's right shoulder showed "signs of mild supraspinatus tendinopathy." (ID## 359, 392). An MRI of plaintiff's cervical spine on February 10, 2010, showed mild degenerative disc disease at C2-3, C3-4, and C4-5 with spondylosis. There was no stenosis and no significant change since October 2009. (ID## 388, 390).

On March 1, 2010, plaintiff was examined by Chris Sloffer, M.D., of Great Lakes Neurosurgical Associates, P.C. Plaintiff retained good strength and reflexes. Objective tests revealed no basis for surgical intervention. Plaintiff was "adamant that he had no symptoms before the accident." Dr. Sloffer did not "see anything here that would be likely to respond to surgical repair." (ID## 473-74).

On April 15, 2010, plaintiff reported to Orthopaedic Associates of Michigan that he was experiencing discomfort in his cervical spine and right arm. He rated his pain as a 4.5 out of 10. He stated that he stopped smoking in 1994 and did not use alcohol or any other drugs. He walked with a normal gait and was alert, oriented, cooperative, and not in any acute distress. Sensation remained intact and plaintiff's motor strength was 5/5. (ID## 442-43).

On April 20, 2010, a bone scan of plaintiff's cervical and thoracic spine and right shoulder returned normal results. (ID## 450, 475). On April 22, 2010, plaintiff's strength in his right upper limb was intact with no loss of sensation. His EMG returned normal results with "no evidence of peripheral neuropathy, plexopathy, or

radiculopathy." (ID# 448). On May 13, 2010, Joseph Brown, D.O., noted that plaintiff's bone scan was normal. Plaintiff did not have any condition warranting surgical intervention. (ID## 447, 450).

On September 14, 2010, plaintiff's treating pain management specialist, Girish Juneja, M.D., of West Michigan Pain reported that plaintiff had "done remarkably well with the interventional pain management and conservative treatment." (ID# 469). Overall, the result had been "quite good." Plaintiff's pain was "significantly improving." He continued to have "intermittent lower extremity pain, still bilateral and is more so on the right side." (ID# 469).

On December 8, 2010, Stephen Bloom, D.O., performed a consultative examination. He prepared a report for Medicololegal Services, Inc., in connection with plaintiff's lawsuit stemming from the car accident. (ID## 455-62). Dr. Bloom's report made it clear that his evaluation was "not intended to establish a doctor-patient relationship." (ID# 455). Plaintiff told Dr. Bloom that he did not use "any recreational drugs." (ID# 459). Dr. Bloom found that none of the evidence he had received suggested that plaintiff had a preexisting condition before the accident in August 2009. Plaintiff's gait was normal. (ID# 460). Dr. Bloom offered a diagnosis of "likely stage I sympathetically mediated pain syndrome of the right shoulder, limb, and extremity secondary to a motor vehicle accident on 08/14/09." He found nothing clinically that would suggest C5 or C6 radiculopathy. Dr. Bloom noted: "By his own admission [plaintiff had] not really been doing any of the home exercise program, stretching, conditioning, scapular stabilization and desensitizing he should do." (ID## 461-62).

On January 20, 2011, Physician's Assistant Michelle Godfrey directed plaintiff to provide a urine drug screen.  Plaintiffs' response was to admit his marijuana use. The urine drug screen confirmed marijuana use.  It did not show the "norco" that had been prescribed, which was a breach of narcotic drug contract.  Plaintiff was advised that doctors would no longer be prescribing narcotics.  Plaintiff "did not have norco in his system, therefore no weaning was necessary."  (ID# 432).

On April 12, 2011, plaintiff appeared at the Mary Fee Bed Pain Center "for evaluation of multiple pain complaints following an automobile accident in 2009."  (ID# 499).  Plaintiff reported to James Hudson, M.D., that he continued to drive, but felt terrified if he had to ride in the passenger's seat.  "He recently settled the lawsuit with the insurance company of the van that he was in that paid out the full amount covered by insurance, but this was only $20,000.  He is continuing to be covered by the auto insurance for medical."  (ID# 504).

Plaintiff reported a history of being a binge drinker, but indicated he had not consumed alcohol in 5 to 6 years.  He reported that he had used cocaine as a teenager. He stated that he was "using marijuana regularly."  (ID# 505).  Plaintiff's gait was normal.  His strength was "equal and symmetrical in all 4 extremities."  (ID# 506).

On April 12, 2011, he also received a psychological evaluation.   Psychologist Karen Hanson found that plaintiff had no deficits in orientation, attention, memory, thought organization or content, or judgment.  (ID# 499).  Plaintiff indicated that he had been self-employed before the accident and was involved in a legal struggle to get reimbursed for lost wages.  Plaintiff reported a history of very heavy drinking, "from

6 to 48 beers, 1 or 2 times a weeks." He had broken his hand six times in bar fights. Plaintiff stated that he was "trying to get" a medical marijuana card for his daily marijuana use. He stated that marijuana use helped him get to sleep at night. (ID# 500). Plaintiff reported that he had recently returned from a 5-day trip to North Carolina to visit with friends. Plaintiff stated that he had been uncomfortable the whole time. (ID# 501).

Plaintiff participated for several months in 2001 in a Mary Free Bed multidisciplinary pain rehabilitation treatment program. Plaintiff testified that he was involved in another motor vehicle accident in June 2011. (ID## 99-100). The administrative record does not contain any medical records from June 2011 indicating that plaintiff sought or required medical treatment immediately after this accident. Mary Free Bed progress notes, dated June 28, 2011, indicate that plaintiff experienced a brief reduction in his occupational therapy performance when he "first returned after [the motor vehicle accident]." (ID# 873).

On September 20, 2011, plaintiff was discharged from the Mary Free Bed program. Plaintiff reported that his marijuana use was down to once a day at bedtime. He indicated that he felt he was much more functional and was looking forward to trying to return to work. (ID# 797). Psychologist Hanson reported that she had seen plaintiff for seventeen sessions from May 12, 2011, through August 30, 2011, including two relaxation and biofeedback sessions. Most of the session time was spent processing family stressors and ways to improve stress management including marital stressors and stressors with his adult children. She also spent time helping plaintiff find ways

to promote healthy behaviors, particularly to improve his compliance with his exercise program and generally increasing his activity. Plaintiff's prognosis was good. His mood and activity level improved. He had decreased some stressors, but remained anxious about his ability to return to work. (ID# 799).

Plaintiff's grip strength was 130 pounds on the right and 139 pounds on the left. Plaintiff's endurance was in the 80th percentile for his age group. Plaintiff participated in functional lifting and had demonstrated lifting maximums of 45 pounds at waist level, 40 pounds between the floor and waist level, 30 pounds from waist to shoulder level, and 15 pounds from shoulder to overhead. Based on the results of occupational therapy, plaintiff was released to perform work related activities. (ID## 795, 797, 881).

On June 17, 2011, Psychologist Michael McCarthy reviewed the evidence and offered his opinion that plaintiff was not significantly limited in his ability to carry out short and simple instructions and not significantly limited in his ability to make simple work-related decisions. Plaintiff's pain and physical problems would likely interfere with his concentration at times, which would interfere with his ability to carry out complex tasks and instructions. Plaintiff was likely to function better in settings with minimal interpersonal interactions. (ID## 129-32).

On June 18, 2011, Shahida Mohidddin, M.D., reviewed the evidence and offered his opinion that plaintiff could occasionally lift and carry up to 20 pounds and frequently carry 10 pounds. Plaintiff could sit for about 6 hours in an 8-hour workday. He could stand and walk for about 6 hours in an 8-hour workday. He could

occasionally climb ramps and stairs, balance, and crawl. He could frequently stoop, kneel and crouch. He was limited in right overhead reaching. (ID## 126-29).

On October 20, 2011, plaintiff appeared as a new patient at Metro Health Hospital. (ID# 632). Plaintiff was well developed, well nourished, and in no apparent distress. (ID# 633). He indicated that he had been in a car accident in 2009, but said noting regarding his more recent accident in June 2011. (ID# 632). Plaintiff stated that he had a medical marijuana card and that he smoked "twice daily." (ID# 631). According to December 7, 2011, progress notes, the MRI of plaintiff's right brachial plexus and EMG of his right upper extremity were within normal limits. (ID# 621).

On January 19, 2012, plaintiff was examined by Scott Greenwald, M.D., on a referral from Physician's Assistant Therese Roys. (ID## 696-700). Dr. Greenwald indicated that he was seeing plaintiff to evaluate the right sided neck and arm pain. Treatment with a sympathetic nerve block was being considered and Dr. Greenwald was attempting to determine whether there was a sympathetic component to plaintiff's pain. (ID## 698-99). Plaintiff reported that the pain began with his car accident on August 14, 2009. He indicated that he had been involved in a more recent car accident in June 2011. Plaintiff reported that in the June 2011 accident, he drove his car into a ditch and "popped his collar bone out." (ID# 698).

Plaintiff admitted his current use of THC or other illicit substances. Dr. Greenwald described plaintiff as a well developed, well nourished, male in no acute distress. His muscle tone and gait were normal. His muscle strength was normal. (ID## 697-98). Dr. Greenwald indicated that the right arm/hand pain that plaintiff

-18-

reported was "possible CRPS/sympahetically mediated pain." He also noted plaintiff's cervical spondylosis and cervical degenerative disc disease. Dr. Greenwald stated: "I do not find much in terms of findings. There is no allodynia, swelling, color changes, skin or nail changes." (ID# 699). Nonetheless, sympathetically mediated pain remained a consideration. Dr. Greenwald indicated that he would first try a "stellate block," and depending on plaintiff's response, then consider use of a spinal column stimulator. Dr. Greenwald noted that if a stimulator was being considered, plaintiff "would also need a psychological evaluation as part of [the] workup[.]"[4] (ID# 699).

On February 9, 2012, plaintiff reported that the stellate ganglion block, right, had provided very good pain relief. (ID# 692). Because plaintiff had reported significant pain relief, Dr. Greenwald found that it seemed to suggest a "possible sympathetic etiology." He repeated the injection procedure. (ID# 695). On March 8, 2012, plaintiff reported to Dr. Greenwald that the second injection provided good pain relief. (ID# 687). Dr. Greenwald gave plaintiff a third injection. (ID# 690).

On June 6, 2012, Dr. Bloom wrote a letter to an insurance claims representative noting that plaintiff's EMG and nerve conduction studies performed by Dr. Altman had returned normal results. He thought that plaintiff likely had sympathetically mediated pain and that the injections should be discontinued because they only

---

[4]Subsequent notes indicate that this psychological assessment was performed by Dr. Craig Vandermaas. (ID# 685). The results did not give rise to any concerns about stimulator placement. Plaintiff indicated that he was trying to avoid narcotics and that was considered a good idea given plaintiff's "history of narcotic abuse and alcohol abuse." (ID# 685).

provided short-term pain relief.  Dr. Bloom recommended a trial of a dorsal column stimulator.  (ID# 765).  On June 21, 2012, Dr. Greenwald initiated the trial of a dorsal column stimulator. implant. (ID# 687).

On June 25, 2012, plaintiff sought treatment at Spectrum Health for an infection.  He stated that he had a history of a petit mal seizure, but had not experienced any since age fifteen.  (ID# 660).  Plaintiff reported that he had "used medical marijuana in the past."  (ID# 661).  Dr. Pham removed the stimulator because plaintiff had developed an infection.  (ID# 665).  Plaintiff was treated with antibiotics and he suffered no complications.  (ID## 660, 682).

On July 9, 2012, plaintiff reported to Physician's Assistant Bray at Michigan Pain Consultants, P.C., that he had experienced a greater than 90% reduction of his right upper extremity pain during the spinal cord stimulator trial.  (ID# 674).

The Court finds no merit in plaintiff's argument that the ALJ improperly weighed the evidence presented to her.

### 3.

Plaintiff argues that the ALJ did not have substantial evidence to support her finding that plaintiff could perform a significant number of other jobs in the national economy. (Pltf. Br. at 19-20, ID## 917-18; Reply Br. at 4-5, ID## 943-44 ).  The claimant bears the burden at steps 1 through 4 of the sequential analysis. *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  At step 5, the burden shifts to the Commissioner.  The ALJ satisfies her burden at step 5 by establishing by substantial evidence that there exists in the national economy a significant number of jobs the

plaintiff is capable of performing based on his RFC, age, education, and work experience. *Walters v. Commissioner*, 127 F.3d at 529; *see* 42 U.S.C. § 423(d)(2)(A). "[T]he Commissioner need not show that a significant number of jobs exist in the local economy, only that the claimant is capable of performing other jobs existing in the national economy."[5] *Geiger v. Apfel*, No. 99-5590, 2000 WL 1257184, at * 2 (6th Cir. July 10, 2000).

Plaintiff argues that he is only capable of performing a small percentage of the jobs in the region. This is not a basis for disturbing the Commissioner's decision. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1987) ("In defining disability within the meaning of the Act, Congress spoke in terms of numbers, not percentages.") (citing 42 U.S.C. § 423(d)(2)(A)).[6] "[W]hen there is testimony that a significant number of jobs exist[] for which a claimant is qualified, it is immaterial that this is a small percentage of the total number of jobs in a given area." *Id.* at 275; *see also Brewer v. Colvin*, No. 2:13-cv-28, 2014 WL 794372, at * 9 (E.D. Tenn. Feb. 27, 2014) (noting that the Sixth Circuit "has expressly rejected" such percentage-based arguments).

In *Hall v. Bowen*, the Sixth Circuit addressed the "difficult task of enumerating exactly what constitutes a 'significant number [of jobs].'" 837 F.3d at 275. It refused

----

[5]The issue is not whether "work exists in the immediate area where the claimant resides, whether a specific job vacancy actually exists, or whether the claimant would be hired." *Johnson v. Secretary of Health & Human Servs*, No. 92-1803, 1993 WL 20548, at * 4 (6th Cir. Feb. 1, 1993).

[6]In *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003), the Supreme Court noted that the same definition applies to SSI claims and is codified at  42 U.S.C. § 1382c(a)(3)(B).

to "set forth one special number [as] the boundary line between a 'significant number' and an insignificant number of jobs," and counseled that courts should address the determination on a case-by-case basis.  *Id.; see Nejat v. Commissioner*, 359 F. App'x 574, 579 (6th Cir. 2009).  The Sixth Circuit indicated  that among the factors that courts should consider are the level of the claimant's disability, the reliability of the vocational expert's testimony, the distance the claimant is capable of traveling to engage in the assigned work, the isolated nature of the jobs, and the types and availability of such work.  *Hall*, 837 F.3d at 275.

The decision "should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation."  *Hall*, 837 F.3d at 275.  The substantial evidence standard applies.  *See Doran v. Commissioner*, 467 F. App'x 446, 449 (6th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. at 401.

The vocational expert identified the following jobs that a hypothetical person of plaintiff's age with his RFC, education, and work experience would be capable of performing: surveillance monitor, 135 jobs locally and 3,535 jobs nationally; call out operator, 250 jobs locally and 14,000 jobs nationally; and information clerk, 200 jobs locally and 7,000 jobs nationally.  (Op. at 12-13, ID## 49-50).  Thus, the ALJ identified a total of 585 jobs in Michigan and 24,535 jobs in the United States that the hypothetical person would be capable of performing.  Plaintiff simply ignores the national job figures.  The Court finds that, under the substantial evidence standard,

the ALJ's step 5 finding of non-disability based on the jobs in the national economy withstands appellate review.

Further, with regard to the local economy numbers, there is no magic number of jobs and the Court's decision must be based on the particular facts of this case. Nonetheless, Sixth Circuit authority recognizing that as few as 500 jobs can constitute a significant number is instructive. *See Nejat v. Commissioner*, 359 F. App'x at 579. While the Court would probably not hold that such relatively low number of jobs in the local economy constitutes a "substantial number of jobs" if the Court were responsible for making an initial determination as a trier of fact, under the deferential substantial evidence standard, the number of jobs the VE identified was not so deficient that a reasonable mind could not accept the evidence as adequate to support the ALJ's conclusion.

## <u>Conclusion</u>

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:  <u>September 28, 2015</u>       <u>/s/ Janet T. Neff</u>
                                        Janet T. Neff
                                        United States District Judge

-23-